**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DELTA MEDICAL SYSTEMS, INC., <br><br>     Plaintiff, <br><br> v. <br><br> DRE HEALTH CORP., DRE HEALTH CORPORATION, AHMED ISAAC BAWANY, and SACATELLE HOLDINGS, LLC, <br><br>     Defendants. | Civil Action No.: 1:21-cv-01687-WMR |

**DELTA MEDICAL SYSTEMS, INC.'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' AMENDED MOTION TO DISMISS**

COMES NOW Plaintiff Delta Medical Systems, Inc. ("Plaintiff" or "Delta Medical") and files its Response in Opposition to Defendants DRE Health Corp. ("DRE Health"), DRE Health Corporation ("DHC"), Ahmed Isaac Bawany ("Bawany"), and Sacatelle Holdings, LLC's ("Sacatelle") (collectively, the "Defendants") Amended Motion to Dismiss [Dkt. 20] ("Motion to Dismiss") and states as follows:

## **INTRODUCTION**

Delta Medical filed this action against Defendants for trademark infringement and unfair competition under the Lanham Act, as amended, 15 U.S.C. §§ 1114 and 1125; fraudulent use of trademark and violation of the Georgia Uniform Deceptive Trade Practices Act under O.C.G.A. §§ 23-2-55 and 10-1-372; as well as Georgia common law trademark infringement and unfair competition. Defendants moved to dismiss on the following three grounds: (1) lack of personal jurisdiction; (2) failure to join indispensable parties; and (3) failure to state a claim against Defendant Bawany.  Defendants' Motion lacks merit and should be denied in its entirety.

In the alternative, if not denied outright, the Motion to Dismiss should be denied pending completion of jurisdictional discovery, including deposition of Bawany.  Delta Medical is entitled to jurisdictional discovery as the analysis below, as well as the supporting declarations and exhibits, show with "reasonable particularity" that discovery will lead to ample additional proof of Defendants DRE Health, DHC, and Bawany (the "DRE Defendants")[1] contacts with this forum are fully sufficient to support the exercise of specific personal jurisdiction.

---

[1] DRE Health has been administratively dissolved on May 13, 2021 and has "never conducted any business separate and apart from" DHC.  Declaration of A. Isaac Bawany ("Bawany Decl.") ¶¶ 4, 7 [Dkt. 20-2].  Accordingly, they shall be treated

## RELEVANT ALLEGATIONS

## I.   BACKGROUND

Delta Medical is a distributor of a high-quality medical examination gloves based in Alpharetta, Georgia.  It has enjoyed long-term success from years of extensive and expensive product development in the industry.  As part of its efforts distinguish its products and build its brand, Delta Medical started using the trademark NITREX in connection with its medical gloves in March 1994.  *See* Declaration of Tom Brooks ("Brooks Decl.") ¶ 7, attached as **Exhibit A**.  Delta Medical registered its now-incontestable trademark with the U.S. Patent and Trademark Office ("USPTO") on March 23, 2003 (Reg. No. 2,824,773).  *Id.* ¶ 8. Delta Medical has been continuously using the NITREX mark in connection with its products and its federal registration is still in full force and effect.  *See* Declaration of Kseniya 'Nicole' Kuprovska ("Kuprovska Decl."), Ex. 9, attached as **Exhibit B.**

Defendants, also manufacturers and distributors of  personal protection equipment ("PPE"), directly compete with Delta Medical nationwide and in Georgia.  Delta Medical brought this action to enforce its intellectual property rights in the NITREX mark because Defendants have used a confusingly similar

---

as a single entity for purposes of the analysis herein.

mark, NITEREX, as well as Delta Medical's exact mark, NITREX, to sell nearly identical product without a license or authority. *Id*. ¶¶ 10-11.

Plaintiff discovered Defendants' misconduct after Defendants sent an unsolicited MailChimp email (the "Email"), advertising their infringing products to Delta Medical's President and CEO, Tom Brooks. *Id*. at ¶ 12; *see* Compl, Ex. D [Dkt. 1-4]. The March 16, 2021 Email, sent from Sacatelle's email address saniglobal@sacatelle.com, targeted this forum by sending an unsolicited advertisement to a Georgia resident and offering for sale medical examination gloves under the infringing NITEREX mark. Brooks Decl. ¶ 12.

A. **Defendants' Infringing, Improper Use of the "NITEREX®" Mark.**

To investigate Defendants' trademark infringement, Brooks followed the link in the email to place an order for 10 boxes of the advertised gloves, which Sacatelle duly fulfilled. *Id*. ¶¶ 13-15. Sacatelle's deposit invoice (the "Invoice"), Project No. 2670, Deposit Invoice No. D169955, reflecting Brooks's March 16, 2021 order, refers to the product as both "NITEREX® GLOVES" *and* "NITREX" in the same document.[2] *See* Compl., Ex. B [Dkt. 1-2, Page 5]. As shown in photographs attached to the Complaint, Defendants' product packaging was also

---

[2] Curiously, Defendants' version of the same Invoice reflects a different purchase date, March 23, 2021. Schwerd Decl., Ex. 1 [Dkt. 20-4]. Furthermore, Defendants neglected to redact Mr. Brooks's credit card information, in violation of Local Rule 5.2(a). *Id*.

marked "NITEREX®," constituting trademark infringement and improper use of the federal trademark registration symbol. *Id.*; 15 U.S.C. § 1111.[3]

### B. DRE Defendants Ignored Delta Medical's Cease and Desist Letter, Attempted to Register Their Infringing Mark, and Contact Brooks to Purchase Delta Medical.

Delta Medical promptly sent cease and desist letters, first to Sacatelle on March 30, 2021 (the "Sacatelle C&D Letter"), and then to DRE Health on April 2, 2021 (the "DRE Health C&D Letter"). Brooks Decl. ¶ 17; *see* Compl., Exs. E-F [Dkts. 1-4 & -5]. The letters notified Defendants of the reasons their use of the NITEREX® mark is unlawful, *inter alia*, and that Delta Medical shall vigorously enforce its rights if Defendants do not immediately stop misappropriating its trademark. *Id.*

Instead of complying with this request, DRE Defendants doubled down on their unlawful activity by attempting to register the infringing NITEREX mark only six days after Plaintiff sent its DRE Health C&D Letter. *See* Compl., Ex. C [Dkt. 1-3]; Kuprovska Decl. ¶ 12, Ex. 10. On April 8, 2021, Bawany electronically executed a declaration on behalf of DHC as part of its USPTO application, filed

---

[3] The ® symbol may only be used for federally registered trademarks. Unregistered marks are to be marked with ™. 15 U.S.C. § 1111; TMEP § 906 (22nd ed. Oct. 2018); https://www.uspto.gov/trademarks/basics/what-trademark. Defendants' NITEREX mark has never been federally registered with the USPTO. *See* Kuprovska Decl. ¶ 12, Ex. 10.

the following day.  *Id.*  U.S. Trademark Application Serial No. 90/635,715 (filed

Apr. 9, 2021).

The declaration required Bawany to attest to the following:

> To the best of the signatory's knowledge and belief, **no
> other persons, . . . have the right to use the mark in
> commerce,** either in the identical form or **in such near
> resemblance as to be likely, when used on or in
> connection with the goods/services of such other
> persons, to cause confusion or mistake, or to deceive.**

Compl., Ex. C [Dkt. 1-3].  The same form also provides that "willful false

statements . . . are punishable by fine or imprisonment, or both, under 18 U.S.C. §

1001[.]"  *Id.*  Bawany signed the declaration, attesting he had no knowledge of

potentially confusingly similar marks immediately after Delta Medical put all

Defendants on notice of the opposite with its cease and desist letters.  *Id.*  As of

June 27, 2021, the DRE Defendants' USPTO application is still pending.  *See*

Kuprovska Decl., Ex. 10.

Subsequently, Defendants, through Bawany, once again directly reached out

to Brooks.  On April 27, 2021, Bawany called Brooks's Georgia telephone number

and offered to purchase Delta Medical.  *See* Brooks Decl. ¶ 20.

This series of actions and the false trademark declaration submitted by

Bawany provide further color to Defendants' intentional effort to reach into this

forum to misappropriate Plaintiff's goodwill and deprive it of the benefit of its

intellectual property rights. Further, additional information and documents, submitted as exhibits to the Kuprovska and Brooks declarations, attached hereto, reveal that the infringing NITEREX mark is still being widely used in connection with Defendants' products, causing consumer confusion and harm to Plaintiff, as well as its customers nationwide and here in Georgia.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(2): Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the complaint must contain "sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). "If the defendant submits affidavits challenging the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavit evidence, the court must construe all reasonable inferences in plaintiff's favor. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

### B.   Rule 12(b)(7): Failure to Join Indispensable Parties

Movant bears the burden to prove that failure to join an indispensable party warrants dismissal pursuant to Rule 19. Fed. R. Civ. P. 19; *U-Haul Co. of Arizona*

*v. Mayberry*, 3:19-CV-156-TCB, 2020 WL 6073874, at *2 (N.D. Ga. July 22, 2020).  "[T]he Court may consider both the pleadings and other relevant extra-pleading evidence." *Id*.  Importantly, the Court may order joinder of a necessary non-party, even as an "involuntary plaintiff," so long as joinder is feasible.  *Helix Inv. Mgt., LP v. Privilege Direct Corp.*, 364 F. Supp. 3d 1343, 1350 (M.D. Fla. 2019).  If joinder is impossible, the Court must "determine, in equity and good conscience, whether the action should go forward" based on the four factors listed in Rule 19(b).  *Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251, 1281-82 (N.D. Ga. 2019).

### C.    Rule 12(b)(6): Failure to State a Claim

On a Rule 12(b)(6) motion to dismiss, courts must determine whether plaintiff alleged sufficient facts to show a plausible claim for relief.  *Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  The allegations in the complaint are taken as true and construed in a light most favorable to the plaintiff.  *Id*.  The complaint need only contain "factual content . . . to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The "plausible grounds" standard does not impose a probability requirement[;] it simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence of [the claim]." *Bell A. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## III.   ARGUMENT AND CITATION TO AUTHORITY

### A.   Each Defendant is Subject to Specific Personal Jurisdiction.

The court undertakes a two-step inquiry to determine whether specific personal jurisdiction over a non-resident defendant exists: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment." *Diamond Crystal*, 593 F.3d at 1257.  Delta Medical alleged sufficient facts to meet each prong of this analysis.

### 1.   Plaintiff Satisfied the Georgia Long-Arm Statute.

Pursuant to the Georgia long-arm statute, courts in this forum may exercise personal jurisdiction over nonresident defendants when the action arises out of the enumerated activities connected to this state, including the following: (1) transacting business in Georgia; (2) tortious conduct in Georgia; or (3) tortious conduct that causes an injury in Georgia and "the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]" O.C.G.A. § 9-10-91.

i.   Defendants Transacted Business in Georgia Pursuant to
O.C.G.A. § 9-10-91(1).

All four Defendants meet the requirements set forth in subsection (1) of the

Georgia long-arm statute by transacting business in this state that gave rise to

Plaintiff's claims.  O.C.G.A. § 9-10-91(1).  Defendants "must have purposefully

done some act or consummated some transaction in Georgia."  *Power Guardian,*

*LLC v. Directional Energy Corp.*, 904 F. Supp. 2d 1313, 1320 (M.D. Ga. 2012).

At the outset, Sacatelle engaged in business transactions in this forum which

satisfy subsection (1), and its declaration does not refute Plaintiff's allegations

forming the basis for jurisdiction over it.  *See* Declaration of Isaac Schwerd

("Schwerd Decl."), ¶¶ 17-18 [Dkt. 20-4].  Namely, Sacatelle does not deny that it

directed the March 16, 2021 Email into this forum to Brooks, and that it has

fulfilled his order.  *Id.*  Sacatelle also admits it has made at least six other sales in

this state for $13,855.78.[4]  *Id.* ¶ 18.  Sacatelle was formed less than a year ago, in

---

[4] Schwerd's declaration directly contradicts Defendants' arguments that the Brooks order was its sole connection to the forum. Mot. to Dismiss 16 [Dkt. 20-1]. Defendants' arguments that Brooks placed the order in an attempt to manufacture jurisdiction also miss the mark.  *Id.*  Rather, the order was a logical act of due diligence to obtain a sample and verify infringement prior to escalating the situation by engaging counsel and sending cease and desist letters.  Brooks Decl. ¶ 13.

October 2020, but has already conducted sufficient transactions in this forum to be subject to jurisdiction under subsection (1) of the long-arm statute. *Id.* ¶ 2.

The DRE Defendants likewise satisfy subsection (1) through their business transactions. "Defendant need not physically enter the state," and its "mail, telephone calls, and other intangible acts, though occurring while the defendant is physically outside of Georgia" are relevant to this inquiry. *Fronto King, LLC v. Talal*, 1:19-CV-03472-SDG, 2020 WL 7122417, at *7 (N.D. Ga. Sept. 21, 2020). The Court must "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted *any* business within Georgia." *Id.*

Like Sacatelle, DRE Defendants did not physically enter the forum but have sufficient 'intangible' business dealings to meet the requirements of subsection (1). Bawany's April 27, 2021 telephone call to Brooks, on behalf of DRE Defendants, is the most overt example of such direct and targeted business contact with the forum. *See* Brooks Decl. ¶ 24. Other activities, including permitting distributors like Sacatelle to send emails advertising its products into Georgia, fulfilling orders, and deriving revenue therefrom, and any number of other undisclosed business transactions, discussed below, are sufficient basis for jurisdiction under subsection (1) of the long-arm statute.

Although Bawany's carefully worded declaration attempts to distance the DRE Defendants from their infringing product, it fails to persuade. *See generally* Bawany Decl. [Dkt. 20-2].  Specifically, there are numerous factual statements in Bawany's declaration that appear to contradict and undermine other evidence obtained by Plaintiff during its investigation of the infringing activities.  First, Bawany claims DHC sold its infringing products to Sacatelle "with the understanding" Sacatelle will only re-sell in New Jersey.  *Id.* at ¶ 29.  However, Bawany does not point the Court to any legally binding terms or conditions.  *Id.* This alleged "limited authorization" appears to lack any corroborating evidence and is therefore irrelevant for purposes of the analysis here, which analysis construes all inferences in Plaintiff's favor.  *Madara*, 916 F.2d at 1514.

More than fifty Bills of Lading ("BOLs") show that approximately 211,602 cases of the infringing products marked "NITEREX" and generally described as "DISPOSABLE EXAM VINYL GLOVES POWDER FREE," were imported from Shanghai, China to Los Angeles or Long Beach, California, between November 24, 2020 and April 21, 2021.  Brooks Decl. ¶ 21, Ex. 1.  Furthermore, the June 22, 2021 press releases announcing the partnership between another global PPE company and Medx, its official glove distributor and supplier of DRE Health's "niterex" gloves indicate DRE Defendants' sales of these gloves during the

pandemic have been lucrative and widespread.  It is certainly logical to expect that more than just the infringing shipment of Sacatelle made it to Georgia.  *See* Kuprovska Decl., Exs. 6-7.

The questionable veracity of Bawany's USPTO application, his bad faith attempt to register his infringing NITEREX mark immediately following notice of infringement, and improper use of the federal registration mark, taken in conjunction with DHC's self-described massive operations across the entire globe,[5] cast strong doubt upon Bawany's self-serving statements denying any contacts with the State of Georgia.  *See* Bawany Decl. ¶¶ 10, 15, 26, 28 [Dkt. 20-2].

    ii.   <u>In the Alternative, Plaintiff Requests that this Court Grant Leave to Conduct Limited Jurisdictional Discovery.</u>

The Eleventh Circuit recognized that "[i]f the jurisdictional question is genuinely in dispute," the court may allow limited jurisdictional discovery.  *Eaton v. Dorchester Dev., Inc*., 692 F.2d 727, 729 n.7 (11th Cir. 1982).  Where plaintiff "alleges sufficient facts to suggest with reasonable particularity the possible existence of the requisite contacts between the defendant and the forum," it is entitled to leave to obtain facts to support its jurisdictional allegations.  *Majd-Pour v. Georgiana Cmty. Hosp., Inc*., 724 F.2d 901, 903 (11th Cir. 1984).  Based on the

---

[5] As shown on its website, DHC is a global manufacturer, wholesaler, and distributor, which "operates offices globally in 5 countries, with manufacturing facilities in 7 countries."  *See* Kuprovska Decl., Ex. 8.

foregoing discussion of the inconsistencies and questionable veracity of Defendants' declarations, along with the evidence attached to Plaintiff's declarations, Plaintiff is entitled to jurisdictional discovery to determine the true extent of Defendants' dealings in the State of Georgia and to supplement its jurisdictional arguments.

        iii.   <u>Defendants are subject to Jurisdiction Under Subsection (3) for Causing Tortious Injury, Engaging in Persistent Conduct, and Deriving Revenue from this Forum.</u>

All Defendants are subject to this Court's jurisdiction because they meet the requirements of O.C.G.A. § 9-10-91(3).  Under subsection (3), Georgia courts may exercise jurisdiction over a non-resident defendant who "[c]ommits a tortious injury in this state caused by an act or omission outside this state," and either: (1) regularly does or solicits business in Georgia; (2) engages in a persistent course of conduct in Georgia; (3) derives substantial revenue from services rendered in Georgia; (4) has employees in Georgia; or (5) is authorized to do business in Georgia.   O.C.G.A. § 9-10-91(3); *Diamond Crystal*, 593 F.3d at 1262. "The Georgia Court of Appeals has held that a tort occurs where the actual injury takes place[.]" *Thomas v. Strange Eng'g., Inc.*, No. CV 111-074, 2012 WL 993244, at *5 (S.D. Ga. Mar. 22, 2012).

Here, all four Defendants engaged in tortious conduct, including passing off and trademark infringement, which they, at least after receiving Plaintiff's cease and desist letters and subsequent correspondence, knew and intended to cause harm in this forum. *Marvin L. Walker & Assocs., Inc. v. A. L. Buschman, Inc*., 147 Ga. App. 851 (1978) (finding that a single misrepresentation sent into and causing injury in Georgia is a sufficient basis for assertion of long-arm jurisdiction). The consequences of Defendants' tortious acts caused injury to Plaintiff's business and intellectual property rights in Georgia. Accordingly, Defendants' tortious conduct resulted in injury within this forum, as required under subsection (3). *Thomas*, 2012 WL 993244, at *5.

Sacatelle's tortious conduct consists of advertising and selling infringing product in this state. Because these sales form the basis of Plaintiff's claim and Sacatelle had sufficient other business dealings in this forum, all elements of subsection (3) with respect to Sacatelle are satisfied.

The same result applies to the DRE Defendants, who willfully engaged in tortious conduct, even after receiving Delta Medical's cease and desist letters, intending to injure Plaintiff, its customers, and other consumers nationwide, and specifically here in Georgia. Despite Defendants' belated efforts to eliminate infringing online listings from Amazon and eBay, their infringement lingers on the

internet and continues to cause harm and confusion.  S*ee* Kuprovska Decl., Exs. 2-7.  In fact, an eBay listing for Defendants' infringing products was still using Plaintiff's NITREX until as recently as June 23, 2021.  *Id.* at ¶¶ 5-6, Exs. 3-4.  Because Plaintiff's claims arise out of these activities, and DRE Defendants engaged in other persistent above-described contact with this forum,[6] DRE Defendants meet all the requirements under subsection (3) of the long-arm statute.  Accordingly, all Defendants meet the requirements to be subject to specific personal jurisdiction under the long-arm statute.

> **2.   The Exercise of Specific Personal Jurisdiction Over Each Defendant Comports with Due Process.**

Defendants' conduct satisfies the three-part due process inquiry under the second prong of the jurisdictional analysis.  This inquiry requires that: (1) plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) the exercise of personal jurisdiction comports with the "traditional notions of fair play and substantial justice."  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

---

[6] *See* Section III.A.1, *supra.*

The following four considerations comprise the analysis under the "fair play and substantial justice" element: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358. Defendants' respective activities in Georgia as discussed above satisfy each element of the Due Process inquiry.

None of the Defendants dispute that Delta Medical's claims arise out of the parties' advertising, sales, and other infringing conduct in Georgia, satisfying the first element of the test. Schwerd Decl. ¶¶ 17-18 [Dkt. 20-4]. Likewise, the discussion above has shown sufficient facts to establish purposeful availment in Georgia. With respect to Sacatelle, its six sales in Georgia are sufficient to satisfy the second element under Due Process. *Id.* ¶¶ 2, 18. Similarly, the DRE Defendants' intentional infringement and knowingly causing injury to Plaintiff and its consumers in the forum, also satisfy the second element.

Finally, the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. First, if Defendants are able to transact business by selling infringing goods in the State of Georgia, they could reasonably be expected to litigate in this forum, nor have they alleged any hardship due to the distance. *Fronto King,* 2020 WL 7122417, at *8; *see also Louis Vuitton*, 736 F.3d at 1358

(stating defendant "has not offered any evidence of [its] finances or any other limitations . . . to show [it] would be burdened by having to litigate the case in [here]").  Second, Georgia has "a strong interest in hearing the case and protecting consumers from confusion that results from trademark infringement."  *Louis Vuitton*, 736 F.3d at 1358.  Third, Delta Medical is incorporated in, and maintains a principal place of business in Georgia and thus has an "undeniable interest in litigating the case in its chosen forum[.]"  *Id.*  Fourth, Georgia has a strong interest in protecting its citizens from nonresidents' fraudulent and infringing activity. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1030 (2021).

### 3.  Defendants' Arguments That the Court Lacks Jurisdiction Over Bawany are Baseless.

Finally, Defendants' attempt to shield Bawany from liability has no basis in law.  Georgia law recognizes the exercise of personal jurisdiction over individuals whose only "contacts with the forum were made in a corporate capacity" if the individuals undertook specific acts forming the basis of corporate jurisdiction. *Amerireach.com, LLC v. Walker*, 719 S.E.2d 489, 496 (Ga. 2011).  As discussed herein, Bawany directed the infringing and tortious conduct on behalf of the corporate DRE Defendants.  Much of his malicious and tortious conduct on behalf of other Defendants is indisputable, such as his USPTO application with its false declaration for the infringing NITEREX mark.  *See* Compl. Ex. C [Dkt. 1-3];

Kuprovska Decl., Ex. 10.  Moreover, it is Bawany directing the activities of the DRE Defendants as evidenced by his call to Brooks. Brooks Decl. ¶ 20. Defendants failed to proffer any valid evidence to exculpate Bawany, and the claims as to him are not subject to dismissal.

Because Delta Medical has shown that both prongs for specific personal jurisdiction are satisfied with respect to each Defendant, Defendants' motion to dismiss for lack of personal jurisdiction must fail.

### B. Defendants Failed to Show This Action Must be Dismissed for Failure to Join an Indispensable Party.

Defendants' indispensable party argument is a mere diversion with no basis in law.  Defendants failed to carry their burden as to the indispensable party claim. Initially, the movant must show under the indispensable party analysis that, pursuant to Rule 19(a), the non-party is necessary, and joinder is not feasible.  *U-Haul*, 2020 WL 6073874, at *2.  A party is necessary where: (1) in their absence, the court cannot accord complete relief; (2) the missing party's interest in the outcome will be prejudiced if they are not joined; or (3) failure to join will leave an existing party subject to potential inconsistent obligations.  Fed. R. Civ. P. 19(a).

Joinder is feasible if the non-party may be served with process, and joinder will not destroy the court's subject matter jurisdiction.  *Id.*; *Raffensperger*, 413 F. Supp. 3d at 1281.  "Only if . . . the nonparty cannot be joined. . . [does the Court]

- 19 -

go to step two" to assess the fairness factors under Rule 19(b).  *Raffensperger*, 413

F. Supp. 3d at 1281.

Here, Defendants cite to no authority for their proposition that every owner

of jointly owned trademark must be a party to this action.  Defendants make

conclusory assertions that trademark co-owners are indispensable parties, but they

cite primarily non-binding cases that are distinguishable on their facts.  *See, e.g*,

*JTG of Nashville, Inc. v. Rhythm Band, Inc.*, 693 F. Supp. 623 (M.D. Tenn. 1988)

(involving a trademark dispute where *none* of the trademark owners were parties to

an infringement lawsuit).  Even then, the holding in *JTG* contradicts Defendants'

argument as the *JTG* court denied the motion to dismiss and ordered joinder of the

missing owner.  *Id.* at 627.

Most importantly, Defendants completely failed to argue joinder is not

feasible, thus failing to carry their burden under Rule 12(b)(7) as a matter of law.

*See Commodores Ent. Corp. v. McClary*, 822 Fed. Appx. 904, 912 (11th Cir. 2020)

(unpublished) (stating the court need not join an absent co-owner of a mark

residing in New Zealand where movant "did not address feasibility of joinder . . .

and [the absent party] would not have been precluded from suing in future to

determine any ownership rights").  Similarly, this Court recently rejected a party's

attempt to conflate the likelihood of "inconsistent judgments" with "inconsistent

obligations," distinguishing the concepts. *U-Haul*, 2020 WL 6073874, at *5 ("That the two suits might result in disparate findings [of] liability limits is irrelevant," only whether "an inconsistent obligation might result because a party is unable to comply with one court's order without breaching another[.]").

Accordingly, Defendants have not shown any possibility of succeeding on this indispensable party argument and therefore it must be denied.  Furthermore, should the Court determine that the other trademark owners are necessary, it may order joinder as expressly authorized by Rule 19(a)(2).

### C.   Delta Medical Alleged Sufficient Facts to State a Plausible Claim Against Bawany.

Bawany's many tortious acts discussed above are more than sufficient to support Delta Medical's claims against him in his individual capacity.  "Corporate officers can be held personally liable for contributory trademark infringement." *Luxottica Group v. Airport Mini Mall, LLC*, 169 F. Supp. 3d 1343 (N.D. Ga. 2016); *Coach Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1279 (S.D. Fla.2012) (holding that plaintiffs stated a plausible claim that operators of a flea market either willfully or knowingly permitted infringing conduct, and were therefore contributorily liable).

Nothing in the Motion to Dismiss or attached declarations refutes the allegations against Bawany.  His knowing, persistent infringement, even after

receiving Delta Medical's April 2, 2021 cease and desist letter, is ample evidence to support a "plausible" claim.  *See* Compl., Exs. C, F [Dkt. 1-3 & -5]; Brooks Decl. ¶ 17.  Accordingly, Plaintiff stated a plausible claim based on Bawany's infringing conduct, and Defendants' Rule 12(b)(6) challenge as to him must be denied.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court either deny Defendants' Motion to Dismiss in its entirety, or alternatively, deny it pending completion of jurisdictional discovery.

Respectfully submitted this 30th day of June 2021.

**BAKER DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

*/s/ L. Clint Crosby*
L. Clint Crosby
Georgia Bar No. 197877
Dorian B. Kennedy
Georgia Bar No. 404385
Kseniya 'Nicole' Kuprovska
Georgia Bar No. 608840
3414 Peachtree Road NE, Suite 1500
Atlanta, GA 30326
Phone: 404-577-6000
Facsimile: 404-221-6501
ccrosby@bakerdonelson.com
dkennedy@bakerdonelson.com
nkuprovska@bakerdonelson.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

Undersigned counsel certifies the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in Local Rule 5.1(C) and 7.1(D).

Respectfully submitted this 30th day of June 2021.

**BAKER DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

*/s/ L. Clint Crosby*
L. Clint Crosby
GA Bar No. 197877
ccrosby@bakerdonelson.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I electronically filed **Delta Medical Systems, Inc.'s Response in Opposition to Defendants' Amended Motion to Dismiss** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

Respectfully submitted this 30th day of June 2021.

> **BAKER DONELSON, BEARMAN,
> CALDWELL & BERKOWITZ, P.C.**
>
> */s/ L. Clint Crosby*
> L. Clint Crosby
> GA Bar No. 197877
> ccrosby@bakerdonelson.com
>
> *Counsel for Plaintiff*