# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DELTA MEDICAL SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DRE HEALTH CORP., DRE HEALTH CORPORATION, and AHMED ISAAC BAWANY, <br><br> Defendants. | CIVIL ACTION FILE NO. <br> 1:21-cv-01687-WMR |

## **ORDER**

Before the Court is an amended motion to dismiss filed by DRE Health Corp., DRE Health Corporation (together with DRE Health Corp., "DRE Health"), and Ahmed Isaac Bawany (collectively, "Defendants"). [Doc. 20.] After consideration of the complaint filed against Defendants by Delta Medical Systems, Inc. ("Delta Medical") [Doc. 1], the motion to dismiss [Doc. 20], and all other appropriate matters of record, and for the reasons discussed herein, the Court denies the motion to dismiss, grants limited jurisdictional discovery, and grants Delta Medical leave to amend its complaint.

I. **Background**

Delta Medical commenced this action against DRE Health, Mr. Bawany, and Sacatelle Holdings, LLC ("Sacatelle") on April 23, 2021. [Doc. 1.] Delta Medical later voluntarily dismissed Sacatelle from the case, thereby leaving DRE Health and Mr. Bawany as the remaining defendants. [Doc. 33.] The complaint alleges "trademark infringement, false designation of origin and unfair competition" under the Lanham Act and Georgia law based on Defendants' purported infringement of Delta Medical's "NITREX" trademark. [Doc. 1 ¶¶ 6, 14–24.] The complaint alleges that Mr. Bawany, DRE Health's CEO, directed the trademark infringement and related conduct. [*Id.* ¶ 21.] For support, the complaint includes a copy of a cease-and-desist letter sent to DRE Health regarding its allegedly-infringing conduct [Doc. 1-6] and a copy of a trademark application signed by Mr. Bawany for a "NITEREX" mark [Doc. 1-3].

Defendants filed an amended motion to dismiss on June 14, 2021. [Doc. 20.] Defendants argue that this Court lacks personal jurisdiction over them because they do not have sufficient contacts with Georgia. [Doc. 20-1 at 1–2.] Defendants also assert that the complaint should be dismissed because Delta Medical failed to join the other co-owners of the NITREX trademark, Delta Medical Supply Group, Inc. and Atlantic Safety Products, Inc. f/k/a Delta Hospital Supply, Inc. (collectively, the "Co-Owners"), as plaintiffs in this action. [*Id.* at 2; *see* Doc. 1-1 (listing all three

parties as co-owners).] According to Defendants, the Co-Owners are "necessary and indispensable parties" that cannot be joined involuntarily, so the complaint should be dismissed under Federal Rule of Civil Procedure 19. [Doc. 20-1 at 2–3.] Finally, Defendants argue that the complaint fails to state a claim against Mr. Bawany. [*Id.* at 3.]

In response to Defendants' motion, Delta Medical contends that this Court has personal jurisdiction over Defendants and, in the alternative, requests limited jurisdictional discovery. [Doc. 24 at 9–19.] Delta Medical also argues that Defendants failed to demonstrate that the Co-Owners are required parties and that joinder is not feasible. [*Id.* at 19–21.] Lastly, Delta Medical asserts that the complaint sufficiently alleges that Mr. Bawany engaged in "knowing, persistent infringement." [*Id.* at 21–22 (citing Doc. 1-3, the trademark application signed by Mr. Bawany).]

After the parties finished briefing the motion to dismiss, Delta Medical submitted a "Trademark Claim Assignment Agreement" between Delta Medical and the Co-Owners (the "Agreement"). [Doc. 32-1 at 2.] In the Agreement, the Co-Owners assigned to Delta Medical "all of [their] right, title, and interest in and to the trademark infringement claims" asserted in this action. [*Id.*] The Co-Owners did not purport to assign all rights in the NITREX trademark itself. [*Id.*] The Agreement had an effective date of April 15, 2021, approximately one week before Delta

Medical brought this action, and included the case number assigned by this Court. [*Id.*]

The Court held a hearing on the motion to dismiss on July 27, 2021. [Doc. 34.] During the hearing, Delta Medical informed the Court that the Agreement was drafted after this action was filed to reflect an earlier oral agreement with the Co-Owners. After the hearing, the Court invited the parties to submit letter briefs "addressing whether an assignment agreement between the trademark co-owners has to be in writing and, if so, whether an assignment can occur after the date the lawsuit was filed." [*Id.*] The Court also directed the parties to submit proposals on jurisdictional discovery. [*Id.*]

## II. Discussion

The Court begins by addressing personal jurisdiction and whether limited jurisdictional discovery is proper. The Court then considers whether the Co-Owners are required parties and, if so, whether they can be joined in this action. At the end, the Court discusses whether the complaint plausibly states a claim against Mr. Bawany.

### A. Personal Jurisdiction

In their motion to dismiss, Defendants argue that this Court lacks personal jurisdiction over them. [Doc. 20-1 at 8–18.] However, as the Court decided at the hearing on the motion to dismiss, limited jurisdictional discovery is proper here.

"[W]hen jurisdictional facts are in dispute, 'the district court must give the plaintiff an opportunity for discovery.'" *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 (11th Cir. 1982) (quoting *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981)). Indeed, if a motion to dismiss for lack of personal jurisdiction turns on such facts, limited jurisdictional discovery is appropriate. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997). District courts have discretion to determine the scope of jurisdictional discovery. *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984).

Here, there is a factual dispute between the parties over whether Defendants had sufficient contacts with Georgia and thus whether this Court has personal jurisdiction over Defendants. On the one hand, for example, Delta Medical alleges that Defendants "do business in Georgia" by "selling and shipping products" to Georgia. [Doc. 1 ¶ 9.] Specifically, it also alleges that Defendants "advertise and sell" products with the NITEREX mark and includes an invoice for NITEREX gloves shipped to an address in Cumming, Georgia. [Doc. 1 ¶ 15 (citing Doc. 1-2); Doc. 1-2 at 5.] In contrast, with support from a declaration by Mr. Bawany, Defendants assert they have not "conducted any business in Georgia" and that the "single sale of the accused products in Georgia was a sham transaction triggered by [Delta Medical's] CEO," which it argues was an insufficient contact with Georgia. [Doc. 20-1 at 9.] Likewise, the parties dispute the nature of a call by Mr. Bawany

to the Georgia phone number of Delta Medical's CEO [*compare* Doc. 24 at 11, *with* Doc. 30 at 12], and the extent to which Defendants permitted their distributors to market the allegedly-infringing products in Georgia [*compare* Doc. 24 at 11, *with* Doc. 30 at 10–11].

Because these facts and others are in dispute and the motion to dismiss for lack of personal jurisdiction turns on these facts, the Court defers ruling on the personal-jurisdiction issue and finds that limited jurisdictional discovery is proper. *See Eaton*, 692 F.2d at 730; *Chudasama*, 123 F.3d at 1367. Accordingly, the Court denies the motion to dismiss for lack of personal jurisdiction without prejudice and grants Delta Medical limited jurisdictional discovery related to this Court's exercise of personal jurisdiction over Defendants. The discovery will proceed as follows:

- Delta Medical may serve up to five interrogatories on DRE Health;

- Delta Medical may serve up to five requests for production of documents on DRE Health;

- Delta Medical may take one deposition of DRE Health's corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6);

- All discovery shall be limited to Defendants' sale of or efforts to sell or market the allegedly-infringing products in the State of Georgia;

- Delta Medical shall serve its interrogatories and requests for production of documents on DRE Health within seven days of entry of this order;

- DRE Health shall serve responses to the written discovery requests within 30 days of receipt; and

- Delta Medical shall depose DRE Health's corporate representative pursuant to Rule 30(b)(6) within 45 days of receipt of DRE Health's responses to the written discovery requests.

B.  <u>Failure to Join Required Parties</u>

Defendants also move to dismiss the complaint in its entirety for failure to join the Co-Owners, who own the NITREX trademark along with Delta Medical, as plaintiffs. [Doc. 20-1 at 18–24.] Defendants argue that the Co-Owners are required parties and cannot be involuntarily joined. [*Id.* at 18–21.] And, without the Co-Owners, Defendants assert that this action should be dismissed because it might affect the trademark rights of the Co-Owners and because the Co-Owners might sue Defendants in a separate action. [*Id.* at 21–24.]

In response, Delta Medical argues that Defendants fail to demonstrate that the Co-Owners are required parties and that joinder is not feasible. [Doc. 24 at 19–21.] In any event, in its letter brief, Delta Medical asserts that the Co-Owners orally agreed to have Delta Medical pursue this action, and that in the written Agreement, the Co-Owners assigned their rights to the claims in this action to Delta Medical. In light of these agreements, which it argues are valid, Delta Medical says it was not required to join the Co-Owners. In the alternative, Delta Medical requests leave to amend its complaint to add the Co-Owners as plaintiffs.

Under Federal Rule of Civil Procedure 19, the Court may dismiss an action for failure to join a required party. *See* Fed. R. Civ. P. 19(a)–(b). Rule 19 provides

7

a "two-part test." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003). At the first part of the test, the Court must decide, under Rule 19(a)'s standards, "whether the person in question is one who should be joined if feasible." *Id.* at 1280. Rule 19(a) says a party "must be joined" if, in the party's absence, (1) "the court cannot accord complete relief among existing parties"; (2) proceeding with the action may "as a practical matter impair or impede the person's ability to protect" its interest in the action; or (3) proceeding with the action will subject a party to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations" because of the absent party's interest in the action. Fed. R. Civ. P. 19(a)(1). When determining whether a party must be joined under Rule 19(a), "pragmatic concerns, especially the effect on the parties and the litigation, control." *Focus on the Fam.*, 344 F.3d at 1280 (quotation marks omitted). After the first part of the test, if the absent party must be joined but "cannot be (because, for example, joinder would divest the court of jurisdiction)," then the Court continues to the second part. *Id.*

At the second part of the test, the Court must decide whether in "equity and good conscience," the action should nonetheless proceed without the required party by balancing four factors from Rule 19(b). *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999). The factors to balance include "(1) how prejudicial a judgment would be to the nonjoined and joined parties, (2) whether the

prejudice could be lessened depending on the relief fashioned, (3) whether the judgment without joinder would be adequate, and (4) whether the plaintiff would have any alternative remedies were the case dismissed for nonjoinder." *Id.*; *see* Fed. R. Civ. P. 19(b). If the Court determines the action should not proceed after balancing the Rule 19(b) factors, then the action "should be dismissed." *See Focus on the Fam.*, 344 F.3d at 1280. However, dismissal for failure to join a required party is "appropriate only where the [absent party] cannot be made a party." *Id.* (quotation marks omitted).

As an initial matter, the Court need not decide whether the oral and written assignments by the Co-Owners to Delta Medical of their rights to the claims in this action are valid. Even if the assignments are valid, the Court nonetheless finds, at the first part of Rule 19's test, that the Co-Owners are required parties under Rule 19(a). In the Agreement, the Co-Owners assigned to Delta Medical "all of [their] right, title, and interest in and to the trademark infringement claims" asserted in this action. [Doc. 32-1 at 2.] But, the NITREX trademark registration lists Delta Medical and the Co-Owners as owners of the mark [Doc. 1-1], and the Co-Owners did not purport to assign any of their other ownership rights in the NITREX trademark to Delta Medical [Doc. 32-1 at 2]. As such, proceeding with this action without the Co-Owners may, "as a practical matter impair or impede [their] ability to protect" their rights in the NITREX trademark. Fed. R. Civ. P. 19(a)(1)(B)(i).

Defendants have represented that they intend to argue that the NITREX trademark is "invalid and subject to cancellation." [Doc. 20-1 at 22.] The Co-Owners' interest in and ability to enforce or use their mark could thus be impaired during the litigation; indeed, the litigation could result in the invalidation and cancellation of their mark. In addition, proceeding with this action without the Co-Owners may subject Defendants to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). Therefore, in consideration of the "pragmatic concerns, especially the effect on the parties," the Court determines that the Co-Owners are required parties that "must be joined." *Focus on the Fam.*, 344 F.3d at 1280; Fed. R. Civ. P. 19(a)(1). Notably, several other courts have determined that trademark co-owners were required parties under Rule 19(a) for similar reasons. *See, e.g.*, *Int'l Importers, Inc. v. Int'l Spirits & Wines, LLC*, 2011 WL 7807548, at *7–8 (S.D. Fla. July 26, 2011) (collecting cases).

The Court does not need to address the second part of the test under Rule 19(b) because the Co-Owners can be joined in this action. *See Focus on the Fam.*, 344 F.3d at 1280 (stating the Court "need not resolve the question" under Rule 19(b) when the required party can be joined). The Court "need not worry about the destruction of complete diversity" in adding the Co-Owners as parties, *see id.*, as there is federal-question jurisdiction over the Lanham Act claim and supplemental jurisdiction over the state law claims, *see* 28 U.S.C. §§ 1331, 1367(a). And, while

Defendants argue that the Co-Owners cannot be joined because "Rule 19 does not permit involuntary joinder of a patent co-owner," they do not cite any binding authority showing that this patent rule applies to trademark cases. [*See* Doc. 20-1 at 20–21.] But, regardless of whether that rule is correct for *involuntary* joinder, there is no indication in the record that the Co-Owners are refusing to *voluntarily* join this action. To the contrary, in the Agreement, the Co-Owners assigned their rights to Delta Medical in an attempt to allow this litigation to continue. [*See* Doc. 32-1.] And, in its letter brief to this Court, Delta Medical requested leave to amend its complaint to add the Co-Owners as plaintiffs, indicating the Co-Owners are not opposed to joining this action.

Dismissal for failure to join required parties is only appropriate when the required parties cannot be joined, *see Focus on the Fam.*, 344 F.3d at 1280, and Defendants have failed to show that the Co-Owners cannot be joined to this action. Accordingly, the Court denies Defendants' motion to dismiss for failure to join required parties. The Court also grants Delta Medical leave to amend its complaint to add the Co-Owners as plaintiffs. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

    C.    <u>Failure to State a Claim Against Mr. Bawany</u>

Finally, Defendants move to dismiss Delta Medical's claims against Mr. Bawany in his personal capacity for failure to state a claim. [Doc. 20-1 at 24–25.]

11

Defendants assert that Delta Medical "has alleged no facts demonstrating Mr. Bawany's involvement." [*Id.* at 25.] In their view, Delta Medical's allegation that Mr. Bawany is the CEO of DRE Health and directed the "infringing activities" is insufficient to state a claim. [*Id.* at 24; *see* Doc. 1 ¶ 21.]

A complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, the complaint must plead a claim that is plausible on its face and rises above the speculative level. *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020). Although Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," it does not demand "detailed factual allegations." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court treats exhibits attached to the complaint as part of the complaint when ruling on a motion to dismiss for failure to state a claim. *Crowder*, 963 F.3d at 1202.

A corporate officer can be held personally liable for trademark infringement when he knowingly directs or controls the infringing activity. *See Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) ("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the [trademark] infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil."); *Chanel, Inc. v. Italian Activewear of Fla.,*

*Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) ("If an individual actively and knowingly caused the [trademark] infringement, he is personally liable.").

Here, the complaint alleges that Mr. Bawany "is the chief executive officer of [DRE Health] and is directing [its] infringing activities." [Doc. 1 at ¶ 21.] To support this allegation, the complaint includes a copy of the cease-and-desist letter sent to DRE Health on April 2, 2021, regarding its alleged infringement [Doc. 1-6], and a copy of DRE Health's NITEREX trademark application signed by Mr. Bawany and filed on April 9, 2021 [Doc. 1-3]. The cease-and-desist letter informed DRE Health of Delta Medical's trademark right in the NITREX mark and that DRE Health's use of NITEREX was "likely to cause confusion" and thus infringed on Delta Medical's trademark right. [Doc. 1-6 at 2–3.] Nonetheless, about a week later, DRE Health filed a trademark application for NITEREX, which Mr. Bawany signed. [Doc. 1-3 at 2–3.] In signing the application, Mr. Bawany represented that, "[t]o the best of [his] knowledge and belief, *no other persons . . . have the right to use the mark in commerce*, either in the identical form *or in such near resemblance as to be likely . . . to cause confusion*." [*Id.* at 5 (emphasis added).] He also represented that he "believe[d] [DRE Health] is the owner of the [NITEREX] trademark" and that the trademark "was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application." [*Id.* at 4.]

13

Delta Medical's complaint, along with the attached exhibits, sufficiently pleads a claim against Mr. Bawany in his personal capacity that is plausible on its face. *See Crowder*, 963 F.3d at 1202. The complaint's allegation that Mr. Bawany is the CEO of DRE Health and directed its infringement activities, coupled with the cease-and-desist letter and the NITEREX trademark application signed by Mr. Bawany, plausibly show Mr. Bawany was "the moving force behind the infringing activity" and thus could be held personally liable. *See Babbitt Elecs.*, 38 F.3d at 1184. The trademark application, which Mr. Bawany signed, was filed just one week after Delta Medical informed DRE Health (of which Mr. Bawany is the CEO) that it was infringing on Delta Medical's trademark right. Based on the timing of the application, it is plausible that Mr. Bawany was aware of DRE Health's allegedly-infringing activity and attempted to continue that activity by promptly registering a similar mark. Beyond that, Mr. Bawany represented on the application that no one else had the right to use NITEREX in "near resemblance as to be likely . . . to cause confusion," even though Delta Medical had just informed DRE Health that NITEREX was "likely to cause confusion" with NITREX. This plausibly shows other possible misconduct by Mr. Bawany, such as a deceptive trade practice. Finally, Mr. Bawany's representations that he believed DRE Health was the owner of the NITEREX trademark and that the trademark was used in commerce further demonstrates that he plausibly directed or controlled the infringing activity. The

Court therefore denies Defendants' motion to dismiss the action against Mr. Bawany in his personal capacity.

## III. Conclusion

Accordingly, Defendants' amended motion to dismiss [Doc. 20] is **DENIED**. Delta Medical's request for jurisdictional discovery is **GRANTED**. Delta Medical's request for leave to amend the complaint to add the Co-Owners as parties is **GRANTED**.

**IT IS SO ORDERED**, this 8th day of November, 2021.

WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE